(No. 12971.—Decree affirmed.)

HECTOR J. BELL, Appellant, vs. ANDERS E. ANDERSON et al.
Appellees.

*Opinion filed April 21, 1920.*

1. SPECIFIC PERFORMANCE—*a parol contract to convey must be clearly established—Statute of Frauds.* To maintain a suit for specific performance of a parol contract to convey land the complainant must clearly establish the contract by testimony of an undoubted character, and no amount of performance or attempted performance by one of the parties is sufficient to take the case out of the Statute of Frauds unless such a contract is shown to exist.

2. SAME—*when undelivered deed is not a sufficient memorandum of oral contract to convey.* A deed prepared by one of the parties to an alleged parol contract to convey is not a sufficient memorandum to take the case out of the Statute of Frauds where it is in the ordinary form and does not refer to or recite any of the terms or conditions of the alleged contract, and so long as the deed remains undelivered it does not operate to vest title in any of the parties.

3. SAME—*to avoid Statute of Frauds complainant must show taking of possession in pursuance of contract.* To avoid the operation of the Statute of Frauds the complainant seeking specific performance of an oral contract to exchange land must show the taking of possession and the making of valuable improvements by one of the parties in pursuance of the alleged agreement.

4. SAME—*when sale of personal property on land is waiver of right to compel performance of conveyance.* Under the doctrine of election of remedies the complainant in a suit for specific performance of an alleged contract to exchange land must be deemed to have waived his right to compel performance, where, after filing his bill, he has sold part of the personal property he obligated himself to transfer with the land, even though the sale of said property was for the purpose of paying an accrued debt.

5. SAME—*party seeking specific performance must be in position to perform his part of agreement.* Although one party to a contract for the exchange of land has refused to perform his part of the agreement, the other party, before he will be entitled to compel specific performance, must be in a position to convey all that he agreed to exchange.

6. CONTRACTS—*party seeking to rescind contract must put other party in statu quo.* In order to rescind a contract for the conveyance of land the party who has accepted possession of the land in

pursuance of the agreement must keep himself at all times ready and able to put the other party *in statu quo* by delivering to him the identical property conveyed to him, otherwise he must resort to whatever remedy at law he may have.

7. SAME—*party to contract to convey may seek to compel specific performance or sue for damages for breach of the agreement.* Upon the refusal of one party to perform a binding contract to convey land the other party may bring an action at law for damages for the violation of the agreement or he may sue in equity for specific performance.

APPEAL from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding.

WINSTON & LOWY, for appellant.

CHARLES M. HAFT, for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

On April 13, 1918, Hector J. Bell, appellant, filed his bill in the superior court of Cook county for the specific performance of a contract for the exchange of farm property for city property, against appellees, Anders E. Anderson, William J. Reinhold and Charles M. Haft. Appellees filed their joint and several answer to the bill, denying substantially all the allegations therein and setting up the Statute of Frauds. The cause was referred to the master in chancery, who found that no contract had been entered into by the parties and recommended that the bill be dismissed. Objections to the master's report were overruled and argued as exceptions before the court. The chancellor overruled all the exceptions, confirmed the master's report and dismissed the bill for want of equity.

On February 25, 1918, appellant, with George W. Stewart, a real estate broker of Chicago, went to the office of appellee Anderson, in said city, and there dictated to Anderson's stenographer a writing purporting to be a contract between appellant and Anderson for the exchange of two farms owned by appellant,—one in Minnesota and the other

in Iowa,—for an apartment building in Chicago owned by Anderson, the title to which was in Reinhold for convenience. After the written instrument had been prepared with Anderson's name as one of the parties it was changed by eliminating Anderson's name and substituting therefor the name of Reinhold. Said writing was prepared by filling in the blanks on a regular Chicago real estate contract blank and appellant signed and acknowledged the same. The writing was left with Anderson to secure the signature of Reinhold thereto, after some conversation between the parties with reference to an exchange of the properties. Among other things, the writing provided that the Chicago property was to be conveyed to appellant subject to certain incumbrances, one of which was a third mortgage of $10,000, and that in addition to the farms appellant was to convey by bill of sale a considerable amount of personal property located on the Minnesota farm. Neither Anderson nor Reinhold signed the written instrument and appellant never did see or talk with Reinhold. The writing further provided that each party should within a reasonable time furnish the other with a merchantable abstract of title to the property to be exchanged by him or a guaranty policy showing a good and sufficient title, and that Reinhold was to have six days within which to make an investigation of the farms. On February 28, 1918, Stewart wrote appellant that reports received on the Minnesota farm were not satisfactory, and that Anderson would trade with appellant provided he would increase the third mortgage to $15,000, and asked appellant to wire his acceptance of the proposition. On March 1 Stewart again wrote appellant that he was authorized to close up the deal and requested him to send his abstracts and get his papers ready to come to Chicago. On that date Reinhold signed a warranty deed to the Chicago property to appellant that in no way recited or mentioned any of the terms of the purported agreement. On March 9, 1918, appellant went to Chicago, and after

talking with Anderson went to the office of appellee Haft and there signed and indorsed and left with Haft all instruments which would be required of him to complete the deal, consisting of a warranty deed to the farms to Reinhold, notes and a trust deed to secure the same on the Chicago property, insurance policies on the farm buildings, a bill of sale to the personal property on the Minnesota farm and an assignment of rents on the Chicago property to secure certain payments. On March 11, 1918, Reinhold and wife acknowledged the deed signed by him on March 1 and left it with Haft, who was acting as attorney for both parties, with a view to bring about and perfect the deal. Prior to March 9 appellant had sent abstracts of title to Anderson to the farms in question and Anderson had turned them over to Nels Johnson, an attorney in Chicago, for examination. On March 12 Stewart returned the abstracts to the Minnesota farm to appellant with objections raised by Johnson. Anderson took various steps to have some nominal liens removed from the title to his property and to bring his abstracts down to date. Negotiations between the parties apparently continued, and on March 27, 1918, while on his way to Winnipeg, Anderson stopped off and examined the Minnesota farm. On April 11 appellant was again in Chicago and was informed by Haft that Anderson would have nothing further to do with the deal and tendered back the papers to appellant, together with $61 in money left with Haft for revenue stamps. Appellant refused to accept the same and two days later brought this suit.

Appellant's contention is that a definite oral agreement was reached between him and Anderson for the exchange of the properties on February 25, 1918, on condition that the farms, when investigated, should stand up to the representations made of them as to soil and value; that Anderson investigated the farms and found them not up to such standard and proposed to make the exchange provided the third mortgage on the property to be by him conveyed to

appellant should be increased to $15,000, and that appellant accepted that proposition, and that all instruments executed by appellant were executed with a view of completing the exchange of properties. Appellees contend that no such oral contract was made; that the instruments in question were not executed in compliance with any contract; that appellant executed the instruments left by him with Haft to save him the further trouble and expense of returning to Chicago in the event the deal should be completed; that after Anderson investigated and found the farms unsatisfactory he instructed Haft not to deliver the deed to appellant; that appellant is unable to perform his part of the agreement because he has sold a large part of the personal property on the Minnesota farm which he agreed to deliver to Anderson, and that the Statute of Frauds is a complete defense.

It is conceded by appellant that there was no agreement in writing for the exchange of the properties signed by either Anderson or Reinhold. The written instrument was not even amended to include the change in the terms in the amount of the third mortgage to be given by appellant to Anderson on the Chicago property, but it is insisted by appellant that there was a definite contract verbally entered into March 9 between him and Anderson, and that there has been a performance on his part sufficient to take the case out of the requirements of the Statute of Frauds. Upon the question whether or not there was an oral contract, after a careful consideration of the evidence we are of the opinion that the finding of the master in chancery and of the court is supported by the evidence. Under our holding in *Miltimore* v. *Ferry*, 171 Ill. 219, and other similar cases, we would not feel warranted in setting aside the finding of the master in chancery and of the court, as it is supported by and is not manifestly against the weight of the evidence. The finding of the master and of the court, aforesaid, if sustained by us, necessarily compels us to a decision against appellant in this case. It was absolutely essen-

292 — 39

tial to the maintenance of appellant's suit that he establish, by testimony of an undoubted character, a parol contract to exchange and convey the properties, clear and unmistakable in its terms, the Statute of Frauds being pleaded. (*Wright* v. *Raftree,* 181 Ill. 464.) No amount of performance or attempted performance by one of the parties to an alleged oral contract to convey land is sufficient to take the case out of the Statute of Frauds unless it is shown that such a contract to convey existed. There was no memorandum signed by either Anderson or Reinhold sufficient to take the case out of the Statute of Frauds. The deed executed by Reinhold and wife cannot be resorted to as such a memorandum, because the deed is simply a plain deed purporting to convey the Chicago property, without any attempt to refer to or to recite any of the terms or conditions of the alleged contract. It is, therefore, of itself no evidence in writing of such a contract. *Kopp* v. *Reiter,* 146 Ill. 437; *Shovers* v. *Warrick,* 152 id. 355.

But if it should be conceded that there was an oral agreement for the exchange and conveyance of the real estate, definite and certain in all its terms, made between the parties, appellant has not shown such a performance or part performance of the agreement by himself or of Anderson as would entitle him to specific performance. In Illinois, to take a verbal contract out of the operation of the Statute of Frauds it is incumbent on the party seeking specific performance of a contract to exchange real estate to at least show the taking of possession by one of the parties of the property to be conveyed and also the doing of other acts in pursuance of the contract, as the expenditure of money in making valuable improvements by the person requesting such enforcement, and such acts must be definite and referable exclusively to the contract. (*Weir* v. *Weir,* 287 Ill. 495; *Ranson* v. *Ranson,* 233 id. 369; *Shovers* v. *Warrick, supra.*) In every instance under this equitable doctrine, possession of the property of which a conveyance is sought to

be enforced must be shown where the contract is a contract for the purchase of land for a money consideration or for the doing or performing of services.   Where the contract is for the exchange of land between two parties, possession of one of the tracts by the party who was to receive it in exchange for his land must be shown,—that is, possession by the party seeking to enforce specific performance or by the other party of the land to be conveyed to him and possession in pursuance of the contract.   In England, and perhaps in some of the States in this country, possession of the premises agreed to be conveyed is a sufficient performance of a contract to take it out of the Statute of Frauds where that statute is pleaded in equity.   (6 Pomeroy's Eq. Jur. secs. 817, 819.)   In section 823 of the same volume Pomeroy recognizes the fact that in Illinois possession, alone, is not sufficient unless that possession is coupled with payment of the whole or a portion of the purchase price or the equivalent.   In the instant case it is clearly recognized by appellant that neither he nor Reinhold nor Anderson received possession of the real estate to be conveyed to him by the provisions of the alleged oral contract.   Therefore, under the equitable doctrine sought to be enforced in this case, he has not shown such part performance of the contract as entitles him to specific performance, as the Statute of Frauds is a complete defense under appellees' plea. As a matter of fact, there is not even shown a delivery of the deed executed by him to Reinhold and an acceptance of the same by either Reinhold or Anderson and there was no delivery of the deed executed by Reinhold to appellant, and therefore there was no vesting of title in either of the parties by the execution of said deeds.   It is not pretended that there have been any improvements made by appellant on the premises he was to receive in exchange for his farms. The real showing that he has made is that he has executed all papers necessary to such conveyance and placed them in the hands of the appellee Haft, ready to be delivered in

final consummation of the deal, has advanced $61 in money to pay for the revenue stamps in case the deed should be delivered, and has been out considerable other expenses for travel, the making of abstracts and a partial payment of $500 as a commission to the real estate broker on a supposition that the deal would be consummated, and that Anderson caused a deed to be executed by Reinhold for his property, ready to be delivered to appellant when the alleged contract should be consummated, and then, without any apparent good reason, refused to consummate the contract. There can be no question that this is not a sufficient showing to entitle appellant to specific performance.

There is another reason why appellant cannot maintain this suit. After filing his bill he sold a very large part of the personal property on the Minnesota farm, consisting mainly of farm machinery, which he had obligated himself, as he contends, to convey by bill of sale to Anderson or Reinhold, along with the two farms, as the exchange value for Anderson's Chicago property. Appellant's answer to this defense is that he sold $2600 worth of this property to pay the interest on the loan on the farm which had accrued and which Anderson would have had to pay had he consummated the contract, as he ought to have done, and that he sold one of the bulls on the farm for about $70, for the reason he had become dangerous and vicious and was in the habit of chasing and trying to injure persons going onto the premises. Conceding the truth of the answer of appellant to this defense it is not a sufficient defense. He should have either advanced the money to pay the accrued interest or allowed it to have gone by default. If the bull was a dangerous and vicious animal, likely to seriously injure unsuspecting persons coming near him, and was of such a character that he could not be safely confined, appellant would have been justified in disposing of him for beef or otherwise to the best advantage possible, for the reason that no one should be or could be legally required to maintain

such a dangerous nuisance. The sale of the other personal property, however, for the simple purpose of paying an accrued debt, is not a sufficient legal excuse for disposing of that property which he was under obligation to convey, unless he elected to do so upon the theory of affirming the contract and of only pursuing his remedy at law and thereby waiving any right he might have to enforce specific performance of the contract.

It is the positive rule that where two parties have entered into a contract for the sale of land and the sale has been completed, the party accepting the possession of the land for the property conveyed cannot rescind the contract after he has conveyed any substantial portion of it. In order to rescind the contract he must keep himself at all times ready and able to put the other party *in statu quo* by delivering to him the identical property so conveyed to him, or if he cannot do that he must resort to whatever remedy at law for damages, if any, he may have. (*Stackpole* v. *Schmucker,* 225 Ill. 502; *Bollnow* v. *Novacek,* 184 id. 463; *Smith* v. *Brittenham,* 109 id. 540.) For the same reason the same rule applies in specific performance. Where a party has refused to comply with his contract to convey real estate in exchange for other real estate and other property to be conveyed by the other party, the latter, before he can compel specific performance even under a binding contract, must be in position to convey to the other party substantially all the property he agreed to convey by that contract. The moment that he disposes of any substantial part of the property he has obligated himself to convey to the other party, he makes it an impossibility for a court to grant specific performance because of his inability to convey what he agreed to convey. In other words, there are two remedies recognized for the breach of such a binding contract: one an action at law for damages for a violation of the contract, and the other for specific performance. Under the doctrine of election of remedies, when one of these remedies

is elected by a party he cannot resort to the other, and he must be held to have elected the other remedy where he has put it out of his power to substantially make specific performance. *Chicago Gas Light Co.* v. *Town of Lake,* 130 Ill. 42; *Fisher* v. *Burks,* 285 id. 290.

For the reasons aforesaid the decree of the superior court is affirmed.

*Decree affirmed.*